United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FELIX P. LUCERO, | No. C 10-1339 SI (pr) |
| Petitioner, | **ORDER DENYING HABEAS PETITION** |
| v. | |
| R.K. WONG, warden, | |
| Respondent. | |

## INTRODUCTION

Felix P. Lucero, an inmate at San Quentin State Prison, filed this *pro se* action seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254 to challenge the June 11, 2009 decision by the Board of Parole Hearings ("BPH") to find him not suitable for parole. For the reasons discussed below, the petition will be denied.

## BACKGROUND

Lucero is currently in prison serving an indeterminate sentence of 18 years to life following his 1996 conviction in San Joaquin County Superior Court for second-degree murder with the use of a firearm. The recitation of the crime at the BPH hearing indicated that the murder was gang-related, when Lucero and a fellow gang member shot at a vehicle in which they incorrectly thought rival gang members were traveling. One of the occupants of the vehicle died from the gunshot wound to the head. *See* June 11, 2009 Board of Parole Hearings hearing reporter's transcript (hereinafter "RT") at 11-12. When the murder was committed in 1995,

1 Lucero was 16 years old; he had been in a street gang since he was 12 years old, had engaged
2 in other criminal activity for several years, and had fathered a child when he was 15 years old.
3 *See* RT 16, 17-18, 21, 36-41. He was 30 years old at the time of the BPH hearing. RT 34.

4     At the conclusion of the hearing, the BPH panel found Lucero not suitable for parole.
5 The BPH also determined that the denial of parole would be a "three-year denial," RT 85,
6 meaning that Lucero would not have a regularly scheduled parole suitability hearing for three
7 years. The BPH determined that it would be a three-year denial after determining that a 15-year
8 denial and a 10-year denial of parole were not necessary. *See* RT 92.

9     Lucero filed habeas petitions in state court to challenge the BPH's decision. The last
10 reasoned state court opinion is from the San Joaquin County Superior Court. *See* Resp. Ex. 2.
11 The San Joaquin County Superior Court denied Lucero's challenge to the sufficiency of the
12 evidence to support the parole denial, noting that the BPH's decision indicated that the
13 circumstances of the commitment offense were found to be probative of future dangerousness,
14 and the BPH relied on evidence of Lucero's prior criminality, unstable social history, and a
15 psychological evaluation that Lucero "poses a *moderate* risk for violent recidivism if released
16 and that this risk would *increase* if he had difficulties or delays in finding employment, were to
17 resume even social alcohol/drug use, or re-established contact with gangs." Resp. Ex. 2 at 1-2.
18 The superior court rejected Lucero's ex post facto challenge to the amended parole statute, citing
19 *California Dep't of Corrections v. Morales*, 514 U.S. 499 (1995). The superior court did not
20 clearly articulate its analysis, but appears to have rejected the Ex Post Facto Clause claim
21 because Lucero had failed to set forth sufficient facts to show that the BPH's decision had
22 anything other than a speculative and attenuated possibility of increasing the measure of
23 punishment for Lucero. *See* Resp. Ex. 2 at 2.

24     In his federal petition, Lucero contends that (1) the determination that he was not suitable
25 for parole denied him due process because there was insufficient evidence to support the
26 decision, and (2) an amendment to the parole statute that lengthened the period between parole
27 hearings violated his rights under the Ex Post Facto Clause. The court issued an order to show
28

cause why the petition should not be granted, respondent filed an answer, and Lucero filed a traverse. The petition is now ready for decision on the merits.

## JURISDICTION AND VENUE

This court has subject matter jurisdiction over the petition for writ of habeas corpus under 28 U.S.C. § 2254. 28 U.S.C. § 1331. This action is in the proper venue because the petition challenges the execution of the sentence of an inmate incarcerated in Marin County, within this judicial district. 28 U.S.C. §§ 84, 2241(d).

## EXHAUSTION

Prisoners in state custody who wish to challenge collaterally in federal habeas proceedings either the fact or length of their confinement are required first to exhaust state judicial remedies, either on direct appeal or through collateral proceedings, by presenting the highest state court available with a fair opportunity to rule on the merits of each and every claim they seek to raise in federal court. 28 U.S.C. § 2254(b), (c). State judicial remedies have been exhausted for the claims presented in the petition.

## STANDARD OF REVIEW

A petition for writ of habeas corpus may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

///

**DISCUSSION**

A.   Due Process Claim

A "federal court may issue a writ of habeas corpus to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'" *Swarthout v. Cooke*, 131 S. Ct. 859, 861 (2011) (citations omitted.)   The court may not grant habeas relief for state law errors. *Id.*

For purposes of federal habeas review, a California prisoner is entitled to only "minimal" procedural protections in connection with a parole suitability determination.  The procedural protections to which the prisoner is entitled under the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution are limited to an opportunity to be heard and a statement of the reasons why parole was denied. *See id.* at 862.  Lucero does not dispute that he received those two procedural protections. The *Cooke* Court explained that no Supreme Court case "supports converting California's 'some evidence' rule into a substantive federal requirement," *id.*, and the Ninth Circuit erred in holding otherwise.  In light of the Supreme Court's determination that the constitutionally-mandated procedural protections do not include a requirement that there be some evidence (or any other amount of evidence) to support the parole denial, the due process claim must be rejected.

B.   Ex Post Facto Claim

In 2008, the California voters approved Proposition 9, the "Victims' Bill of Rights Act of 2008: Marsy's Law," which modified the availability and frequency of parole hearings.  As amended by Proposition 9, California Penal Code § 3041.5 now provides that the BPH will hear each case every 15 years unless it opts to schedule the next hearing in three, five, seven or ten years.   The most significant changes resulting from the Proposition 9 amendments are that the minimum deferral period is increased from one year to three years, the maximum deferral period is increased from five years to fifteen years, and the default deferral period is changed from one year to fifteen years. *Gilman v. Schwarzenegger*, 638 F.3d 1101, 1105 (9th Cir. 2011).  But

4

Proposition 9 also amended the law governing parole deferral periods by authorizing the BPH to advance a hearing date. The BPH "may exercise its discretion to hold an advance hearing *sua sponte* or at the request of a prisoner." *Id.*[1] The question presented by Lucero's habeas petition is whether use of the amended version of § 3041.5 violated his right to be free from ex post facto laws.

The United States Constitution prohibits the States from passing any "ex post facto Law." U.S. Const., Art. I, § 10, cl. 1. The Ex Post Facto Clause prohibits the government from enacting laws with certain retroactive effects, including laws that changes the punishment and inflict greater punishment for the crime than the punishment authorized by law when the crime was committed. *See Stogner v. California*, 539 U.S. 607, 611-12 (2003); *Calder v. Bull*, 3 U.S. (3 Dall.) 386 (1798).

Changes in parole laws for those who have already committed their crimes may violate the Ex Post Facto Clause, but not every such change does. A change in the substantive law[2] is

---

[1] In *In re Vicks*, 125 Cal. Rptr. 3d 627 (Cal. Ct. App. 2011), a California Court of Appeal held that the Proposition 9 amendments to the California Penal Code § 3041.5 may not be applied to inmates whose crimes predated the effective date of the amendments because doing so would violate the Ex Post Facto Clause. Most significantly for present purposes, *Vicks* concluded that the possibility of an advance hearing was extremely limited under the amended version of § 3041.5 as the prisoner was expressly barred from seeking such a hearing for three years after the denial of parole at a regularly scheduled hearing. *See Vicks*, 125 Cal. Rptr. 3d at 645-46 & n.19. Other California appellate courts have reached the opposite conclusion. For example, in *In re Aragon*, 126 Cal. Rptr. 3d 286, 299 (Cal. Ct. App. 2011), a California Court of Appeal disagreed with *Vicks'* reading of § 3041.5, and concluded that the statute did not impose a 3-year prohibition on inmates petitioning for an advance hearing following the denial of parole at a regularly scheduled suitability hearing. Neither *Vicks* nor *Aragon* has any precedential value, however, because petitions for review were granted in both cases, and the California Supreme Court is now considering the ex post facto question. *See In re Vicks*, 255 P.3d 952 (Cal. 2011) (granting review); *In re. Aragon*, 260 P.3d 282 (Cal. 2011) (granting review and deferring briefing pending consideration and disposition of *Vicks*). "[An] opinion is no longer considered published if the Supreme Court grants review," and such an unpublished opinion "must not be cited or relied on by a court or a party in any other action." Cal. Rules of Court 8.1105(e)(1), 8.1115(a). Regardless of its publication status, *Vicks* is of little use to this court because it rejected *Gilman*'s analysis, *see* 125 Cal.Rptr.3d at 648 n.22, which this court is not free to do.

[2] For example, the Ex Post Facto Clause forbids the states from enhancing the measure of punishment by significantly reducing a prisoner's opportunity to shorten his prison term by altering the "substantive formula" used to calculate parole eligibility or suitability, *see Weaver*

more likely to run afoul of the Clause than a change in procedure (such as Proposition 9's changes to § 3041.5), but labeling it a procedural change is not enough to exclude it from the reach of the Ex Post Facto Clause.

> Although retroactive changes in laws governing parole of inmates *may* violate the *Ex Post Facto* Clause, "not every retroactive procedural change creating a risk of affecting an inmate's terms or conditions of confinement is prohibited." [*Garner v. Jones*, 529 U.S. 244, 250 (2000)]. A retroactive procedural change violates the *Ex Post Facto* Clause when it "creates a *significant risk* of prolonging [an inmate's] incarceration." *Id.* at 251. A "speculative" or "attenuated" risk of prolonging incarceration is insufficient to establish a violation of the *Ex Post Facto* Clause. *Cal. Dep't of Corr. v. Morales*, 514 U.S. 499, 509 (1995).

*Gilman v. Schwarzenegger*, 638 F.3d 1101, 1106 (9th Cir. 2011) (first brackets added; parallel citations omitted).

In *Gilman*, the Ninth Circuit observed that the plaintiffs could not succeed on the merits of their ex post facto challenge to Proposition 9 unless (1) Proposition 9, on its face, created a significant risk of increasing the punishment of California life-term inmates, or (2) the plaintiffs can demonstrate, by evidence drawn from Proposition 9's practical implementation, that its retroactive application will result in a longer period of incarceration than under the prior law. *Gilman*, 638 F.3d at 1107 (quoting *Garner v. Jones*, 529 U.S. 244, 255 (2000)).[3] The court noted that the changes required by Proposition 9 appeared to create a significant risk of prolonging the plaintiffs' incarceration, but concluded that the availability of advance hearings to the board precluded relief because such availability sufficiently reduced the risk of increased punishment for prisoners under the standard set out in *Garner*. *See Gilman*, 638 F.3d at 1108-

---

*v. Maass*, 53 F.3d 956, 959, 960 n.5 (9th Cir. 1995); *Nulph v. Faatz*, 27 F.3d 451, 455-56 (9th Cir. 1994), or by retroactively canceling prison credits which entitle a prisoner to an early release, *Lynce v. Mathis*, 519 U.S. 433, 455-56 (1997) (retroactive alteration of early release provisions implicates Ex Post Facto Clause because such credits are one determinant of prison term and prisoner's effective sentence is altered once this determinate is changed); *Hunter v. Ayers*, 336 F.3d 1007, 1013 (9th Cir. 2003) (violation of Ex Post Facto Clause to apply disadvantageous regulation regarding restoration of good time credits which only became effective after disciplinary decision).

[3]*Gilman* was a civil rights class action under 42 U.S.C. § 1983 rather than a habeas action, and the Ninth Circuit's decision was on an appeal from an order granting a preliminary injunction in favor of the plaintiff-prisoner class. Even with these attributes, *Gilman* guides this court's analysis of Lucero's habeas petition.

6

11.

Lucero fails to show that the amended version of § 3041.5 violated his rights under the Ex Post Facto Clause. Section 3041.5 of the California Penal Code was amended after Lucero committed his crime, so the amended version of that statute is being applied retroactively as to him. A petitioner cannot obtain habeas relief unless he shows that the retroactively applied statute it creates a *significant risk* of prolonging his incarceration. This Lucero has not done. As *Gilman* explained, even though the frequency of the scheduled hearings is decreased, the availability of advance hearings "'would remove any possibility of harm' to prisoners because they would not be required to wait a minimum of three years for a hearing." *Gilman*, 638 F.3d at 1109 (quoting *Morales*, 514 U.S. at 513). Section 3041.5 does not, on its face, violate the Ex Post Facto Clause. And Lucero has not offered any evidence to demonstrate that § 3041.5 violates the Ex Post Facto Clause as it has been implemented in this case. Lucero is not entitled to relief on his Ex Post Facto Clause claim because the San Joaquin County Superior Court's rejection of his claim was not contrary to or an unreasonable application of clearly established federal law, as determined by the Supreme Court.

C.     Motion For Judicial Notice

Lucero filed a motion for judicial notice of three items. Respondent filed an opposition to the motion. First, Lucero requests that this court take judicial notice that the California Court of Appeal "has issued an order to show cause on petition for writ of habeas corpus addressing the issue of the Felony Murder Rule as applied to petitioner's case." Motion For Court To Take Judicial Notice, p. 1. The first request is denied because Lucero provided insufficient evidence as to the content of the petition in that case in the California Court of Appeal. The court can take judicial notice of the existence of an order to show cause in *In Re Felix Lucero*, California Court of Appeal (Third Appellate District) Case No. C066501. *See* Motion, Attachment 1. Regardless of whether there was sufficient evidence for the court to take judicial notice that an order to show cause was issued on a petition addressing the application of the felony murder rule to

1 Lucero's conviction, taking judicial notice of that would do nothing to advance Lucero's cause here because it is irrelevant.

Second, Lucero requests that this court take judicial notice that "the office of Administrative Law has ruled that the Board's use of the Assessment Instruments, which where (sic) applied in the instant case, were not properly implemented pursuant to Government Code section 11346.9(a)(3). Thus, the Board's usage of an invalid psychological evaluation . . . requires the Board to hold a new hearing." Motion For Court To Take Judicial Notice, p. 1. This request is denied because this is not a fact "not subject to reasonable dispute." *See* Fed. R. Evid. 201.

Third, Lucero requests that this court take judicial notice that in *In re Vicks*, 125 Cal.Rptr.3d 627 (Cal. Ct. App. 2011), a California Court of Appeal found that the amendments to the California Penal Code worked by Marsy's Law "do not apply to inmates who committed their offense prior to the passage of Marsy's Law as it would violate the Ex Post Facto Clause of the Federal and State Constitution." Motion For Court To Take Judicial Notice, p. 2. Under Federal Rule of Evidence 201, a "judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). To use the judicial notice process to have the court consider other cases as legal authority is misguided, as Rule 201 applies to adjudicative facts and not legislative facts. The difference was explained in the comment to the rule: adjudicative facts "are simply the facts of the particular case" whereas legislative facts "are those which have relevance to legal reasoning and the lawmaking process, whether in the formulation of a legal principle or ruling by a judge or court or in the enactment of a legislative body." *See* Fed. R. Evid. 201 (note to subdivision (a) for 1972 proposed rules). It is unnecessary to request that the court judicially notice published cases from California and federal courts as legal precedent; the court routinely considers such legal authorities in doing its legal analysis without a party requesting that they be judicially noticed. To the extent petitioner wants the existence

of published or unpublished cases judicially noticed as adjudicative facts, doing so is of very limited value because the court can take notice that such decisions exist, but the court does not take judicial notice that those decisions are correct.

In his motion for judicial notice, petitioner also requested that the court appoint counsel. Counsel will not be appointed because the petition is being denied in this order.

D.  Certificate of Appealability Denied

A certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c). This is not a case in which "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

**CONCLUSION**

The petition for writ of habeas corpus is denied on the merits. Petitioner's motion for judicial notice is DENIED. (Docket # 13.)

The clerk will close the file.

IT IS SO ORDERED.

DATED: November 21, 2011

_____
SUSAN ILLSTON
United States District Judge

9